UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| NATIONAL GREEN GAS, L.L.C., <br> a Minnesota limited liability company, <br><br> Plaintiff, <br><br> v. <br><br><br> ESTRATEGY, INC., a corporation, <br> BRIAN L. SEXTON and JAMILA <br> ALDASHEVA, individuals, <br><br> Defendants. | CASE NO. _____ |

## COMPLAINT

Plaintiff, National Green Gas, L.L.C. (the "Plaintiff"), by and through its undersigned counsel, alleges and states the following for its cause of action against Estrategy, Inc., Brian L. Sexton and Jamila Aldasheva (collectively, the "Defendants"), upon information and belief and based on the investigation to date of its counsel:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action pursuant to U.S.C. Section 1332(d)(2) (diversity jurisdiction), in that there is complete diversity. Plaintiff is a for-profit Minnesota limited liability company with its principal place of business at 10225 Yellow Circle Drive, Minnetonka, Minnesota 55343. Defendant Brian L. Sexton ("Sexton") is the Chief Operating Officer of Estrategy, Inc. ("Estrategy"), a for-profit Delaware corporation doing business as One Salute, with its principal place of

1

business at 1600 Swift Avenue, Suite 100, North Kansas City, Missouri 64116. Defendant Jamila Aldasheva ("Aldasheva") is the wife of Defendant Sexton. Her last known address is 25 E. Superior Street, Apartment 4201, Chicago, Illinois 60611. Diversity jurisdiction exists because the amount in controversy exceeds $75,000, exclusive of costs, this action is between citizens of different states, and the Defendants have certain minimum contacts with the State of Missouri such that the maintenance of the suit in this district does not offend traditional notions of fair play and substantial justice.

2. Defendants conduct business in Missouri and have sufficient contacts with Missouri or otherwise intentionally avail themselves of the laws and markets of Missouri, so as to sustain this Court's jurisdiction over Defendants.

3. Venue is proper in this district pursuant to 28 U.S.C. Section 1391, et seq., because a substantial part of the events or omissions giving rise to Plaintiff's claims and causes of action occurred in this judicial district in Missouri.

4. Plaintiff is a waste management company for biohazardous medical waste and also provides distribution for natural gas. It is incorporated in Minnesota and maintains its principal place of business in Minnesota.

5. On information, Estrategy, doing business as One Salute, provides various services, primarily to United States Government agencies. It is incorporated in Delaware, with its principal place of business registered in Kansas City, Missouri.

**GENERAL ALLEGATIONS APPLICABLE TO ALL CLAIMS**

6. Plaintiff and Estrategy entered into that certain agreement (the "Agreement") pursuant to which Plaintiff, as subcontractor to Estrategy, was to provide certain

professional, consulting or other services in California, as part of Estrategy's contract (the "Contract") with the Department of Veterans Affairs.

7. Plaintiff did provide professional, consulting or other services as part of Estrategy's Contract.

8. Estrategy failed to comply with the terms of the Agreement. Plaintiff duly issued, and Estrategy received, monthly billings that set forth in detail all professional, consulting or other services provided by Plaintiff and the amounts due and owing by Estrategy.

9. Plaintiff is informed and believes that Estrategy was paid by the Department of Veterans Affairs, or other payor, for the professional, consulting or other services provided by Plaintiff to Estrategy as part of Estrategy's Contract.

10. Plaintiff sued Estrategy in the Circuit Court for the County of Fairfax, Virginia, the venue provided in the Agreement between Plaintiff and Estrategy, for the balance owed by Estrategy to Plaintiff in the amount of $453,349.25 with interest at the rate of 6% per year from July 1, 2014.

11. A judgment was entered by the Virginia Court against Estrategy on November 20, 2015. *See* Exhibit 1. The judgment was registered in Missouri and Illinois. *See* Exhibit 2.

12. Estrategy has maintained corporate bank accounts with Bank of America, N.A. and JPMorgan Chase Bank, N.A. (the "Company Accounts"). Defendant Sexton is the sole authorized signer on the Company Accounts. The mailing address for the

Company Accounts is 25 E. Superior Street, Apartment 4201, Chicago, Illinois 60611 (the "Personal Residence"), the last known residence of Defendants Sexton and Aldasheva.

13. Defendants Sexton and Aldasheva are husband and wife.

14. Defendants have maintained a joint bank account (the "Personal Account") with JPMorgan Chase Bank, N.A.

15. Defendants Sexton and Aldasheva have made transfers from the Company Account to the Personal Account for personal purposes during the period of time Estrategy has owed Plaintiff the entire amount due under the Agreement.

16. Defendants Sexton and Aldasheva have transferred money from the Company Accounts directly to Cook County to pay property taxes on their Personal Residence. Defendants have transferred money from the Company Accounts directly to Commonwealth Edison to pay the utility bills for their Personal Residence. Defendants Sexton and Aldasheva routinely used the Company Accounts to pay for personal expenses.

17. Estrategy has not paid, in whole or in part, the judgment obtained by the Plaintiff.

## ALTER EGO THEORY TO PIERCE THE CORPORATE VEIL

18. Plaintiff hereby incorporates by reference paragraphs 1 through 17 as if fully set forth herein.

19. The Defendants Sexton and Aldasheva have transferred money from the Company Accounts to the Personal Account for personal use to render the Company Accounts devoid of funds for Estrategy to pay its creditors.

20. Defendant Sexton, as Chief Operating Officer of Estrategy, controls: (a) its financial affairs; (b) the Company Accounts; (c) its contracts and services; and (d) the overall strategy, direction and management of Estrategy.

21. Defendants Sexton and Aldasheva have used the Company Accounts as if they were their Personal Account. On August 18, 2016, Defendant Sexton transferred $23,000.00 from a Company Account to the Personal Account. On September 9, 2016, Defendant Sexton again transferred $23,200.00 from a Company Account to the Personal Account. On September 15, 2016, Defendant Sexton transferred $12,849.20 from a Company Account to the Personal Account. On September 27, 2016, Defendant Sexton transferred $980.00 from a Company Account to the Personal Account. On October 11, 2016, Defendant Sexton transferred $18,000.00 from a Company Account to the Personal Account. On October 31, 2016, Defendant Sexton transferred $4,653.00 from a Company Account to the Personal Account. There were a total of $82,657.20 transfers by Defendant Sexton over a two-and-one-half-year period from the Company Accounts to the Personal Account, while no payments were made by Estrategy on the obligation owed to Plaintiff.

22. On May 2, 2016, Defendant Sexton transferred $14,104.27 from a Company Account to Cook County, Illinois to pay the property tax on a residence of Defendants Sexton and Aldasheva in Illinois.

23. On June 6, 2016, Defendant Sexton withdrew $3,500.00 from the Company Account at a Bank of America ATM located at 52nd and Pulaski Streets, Chicago, Illinois.

24. Defendant Sexton transferred money from a Company Account directly to Commonwealth Edison, a utility company that serves Northern Illinois, multiple times,

5
Case 4:18-cv-00285-BCW   Document 1   Filed 04/13/18   Page 5 of 18

including: on May 2, 2016, he transferred $1,461.24; on June 7, 2016, he transferred $324.94; and on July 1, 2016, he transferred $293.29. The money transfers appear to be payments of Defendants' personal utility bills.

25. As set forth above, Estrategy is indebted to Plaintiff, and Plaintiff has obtained a judgment for professional, consulting or other services provided by Plaintiff to Estrategy pursuant to the Agreement in the total amount of $453,349.25 plus attorneys' fees, court costs and pre- and post-judgment interest.

26. Defendant Sexton controls Estrategy's revenues and profits.

27. Defendant Sexton has not paid Plaintiff the amount due under the Judgment.

28. Defendants Sexton and Aldasheva used money from the Company Accounts for personal benefit instead of paying creditors and specifically, instead of paying Plaintiff.

29. Defendant Sexton used and controlled the Company Accounts in a manner consistent with personal ownership, not consistent with the role of a corporate officer.

30. The business practices of Estrategy amounted to fraud, allowing Defendant Sexton to breach the Agreement with Plaintiff with no practical consequences. Defendants Sexton and Aldasheva enjoy the benefits of the enterprise and the services rendered by Plaintiff, while not paying creditors like Plaintiff.

31. Defendant Sexton has blurred the lines between the corporate identity of Estrategy and his personal identity. Misuse of the corporate form by Defendant Sexton "constitutes a public wrong justifying disregard of the corporate entity." *See Gadsen v. Home Pres. Co.,* 2004 Del. Ch. LEXIS 14 at *14 (Del. Ch. 2004). Defendant Sexton is the

economic alter ego of Estrategy and claims against Estrategy should be claims against Defendant Sexton.

32. Estrategy's corporate veil should be pierced and Defendant Sexton should be held liable for the corporation's misconduct and obligations because "the corporate form would otherwise be misused to accomplish certain wrongful purposes, most notably fraud." *U.S. v. Bestfoods*, 524 U.S. 51, 62 (1998). It should be done in the interest of justice because fraud and the contravention of a contract are involved. *See Pauley Petroleum, Inc. v. Continental Oil Co.,* 239 A. 2d 629, 633 (Del. S. Ct. 1968).

33. Federal courts in diversity cases apply the conflicts laws of the state in which it sits to determine what law to apply. *Mobil Oil Corp. v. Linear Films, Inc*. 718 F. Supp. 260, 267 (D. Del. 1989) ("*Mobil Oil*") quoting *Klaxon Co. v. Stenton Electric Mfg. Co*., 313 U.S. 487, 496 (1941). Missouri courts apply the "internal affairs" doctrine to a request to pierce the corporate veil because the piercing of the corporate veil involves "an analysis of how the controlling shareholders administered and governed the corporation." *Robinson Mech. Contrs., Inc. v. PTC Grp. Holdings Corp*. 2017 U.S. Dist. LEXIS 88725 at *5 (E.D. Mo. 2017) ("*Robinson*"). The internal affairs doctrine provides that the law of the state of incorporation is applied to disputes concerning the internal organization of a company. Id. at 5 quoting *R & K Lombard Pharmacy Corp. v. Med. Shoppe Int'l, Inc*., 2008 U. S. Dist. LEXIS 17032 at *3 (E.D. Mo. 2008). The doctrine is statutory in Missouri. See Section 351.582(3) Mo. Rev. Stat. 1990. Therefore, Delaware law is applied to a determination that Defendant Sexton is the alter ego of Estrategy and the corporate veil should be pierced.

7
Case 4:18-cv-00285-BCW   Document 1   Filed 04/13/18   Page 7 of 18

34. An alter ego relationship may exist where there is a lack of attention to corporate formalities, including commingling of assets and one entity's complete domination and control over the other entity. *See Mobil Oil* at 266. The alter ego theory may apply where there is such unity between a company and an individual that the separateness of the company has ceased. *W. Coast Opportunity Fund, LLC v. Credit Suisse Sec. (USA), LLC*, 12 A. 3d 1128, 1131 n. 6 (S. Ct. Del. 2009) quoting FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS, Section 41.10. In this case, there is such unity between Estrategy and Defendant Sexton that the separateness of the company has ceased.

35. The facts stated herein support a "veil-piercing" claim. Delaware law requires that the facts support an inference that the alter ego, here Defendant Sexton, has created through Estrategy a sham entity designed to defraud investors and creditors. The Court may consider the following factors to determine whether the corporate veil will be pierced:

(1) whether the company was adequately capitalized for the undertaking;

(2) whether the company was solvent;

(3) whether corporate formalities were observed;

(4) whether the dominant shareholder siphoned company funds; and

(5) whether, in general, the company simply functioned as a façade for the dominant shareholder.

A combination of the factors in addition to injustice or unfairness is determinative. *See Robinson* at 16; *Doberstein v. G-P Indus.*, 2015 Del. Ch. LEXIS 275 at 12 (Del. Ch. 2015).

36. It is a reasonable inference that Estrategy was undercapitalized. Defendant Sexton has engaged in a course of conduct of obtaining federal government contracts that were not capable of being performed by Estrategy but were performed by subcontractors like Plaintiff. Defendant Sexton retained the benefits of those contracts by transferring money from Company Accounts to his Personal Account while leaving creditors like Plaintiff unpaid.

37. Defendant Sexton is engaging in conduct that unjustly shield's Estrategy's assets from its creditors by repeatedly depleting Estrategy's bank accounts so there is no cash available to pay creditors. Defendant Sexton only pays creditors where there is a personal and continuing benefit to him, such as credit cards he can use for personal expenditures. At all times relevant to this Complaint, Defendant Sexton controlled Estrategy's conduct and benefitted from that conduct in a way that created Estrategy's inability or refusal to pay Plaintiff. Defendant Sexton's conduct has been sufficient to permit the reasonable inference that Defendant Sexton renders Estrategy insolvent at the time when creditors demand payment.

38. Defendant Sexton controls Estrategy and has not observed appropriate corporate formalities. Although Estrategy maintains its principal office in Missouri, Defendant Sexton uses his personal residence in Illinois for Estrategy financial transactions. He has opened Company Accounts using his personal address as the address of Estrategy. He limits authority over the Company Accounts solely to himself. Defendant Sexton then uses the Company Accounts as personal bank accounts by repeatedly transferring large sums of money into his personal bank account and transferring Estrategy

money directly to pay his personal debts. Defendant Sexton has repeatedly siphoned Estrategy funds. Defendant Sexton has not treated Estrategy as a distinct entity.

39. Defendant Sexton is the sole person exercising control over Estrategy's operations and finances. Estrategy is a mere corporate façade for Defendant Sexton. He has controlled and directed every aspect of Estrategy's business, including strategies, finances and operations. Defendant Sexton treats Estrategy's income as his personal income. Therefore, Estrategy's debts should be treated as his personal obligations.

40. To allow Defendant Sexton to hide behind the shield of Estrategy to avoid his obligation to Plaintiff would result in fraud, injustice and inequity. Defendant Sexton enters into federal government contracts that he knows he cannot perform. He knowingly entered into a sub-contractor relationship with Plaintiff, so Plaintiff would render the services required for the federal government. When Estrategy was paid for the work performed by Plaintiff, Defendant Sexton chose to retain that money and use it for his personal benefit.

41. Defendant Sexton created Estrategy to defraud creditors and unjustly enrich himself to the detriment of Estrategy's creditors. The factors required by Delaware law to pierce the corporate veil and hold Defendant Sexton liable to Plaintiff as the alter ego of Estrategy are satisfied in this case. It would be an injustice and unfair to allow Defendant Sexton to escape his liability to Plaintiff.

## **FRAUDULENT TRANSFERS**

42. Plaintiff hereby incorporates by reference paragraphs 1 through 41 as if fully set forth herein.

43. Defendants Sexton and Aldasheva have transferred money unlawfully from the Company Accounts to the Personal Account for their personal benefit with the intent to render Estrategy devoid of funds to pay its creditors and consequently to defraud its creditors.

44. Under the Missouri Uniform Fraudulent Transfer Act, Mo. Rev. Stat. Sections 428 to 428.05,

> the following transfers are fraudulent to present and future creditors: a transfer of an obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation: (1) with actual intent to hinder, delay or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor (a) was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or (b) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

45. Defendant Sexton knew that he was using Estrategy's money to pay his personal expenses instead of paying Estrategy's creditors. He repeatedly transferred large sums of cash from the Company Accounts to the Personal Account, thereby depleting the Company Accounts. Defendant Sexton engaged in the transfer of the Estrategy assets to himself, notwithstanding the fact that he owed Plaintiff for the services Plaintiff rendered under the Agreement. Defendant Sexton intended that there would be no funds available in the Company Accounts or any other asset of Estrategy to pay Plaintiff. Therefore, Defendant Sexton defrauded Plaintiff when he induced Plaintiff to enter into the Agreement. There was no intent to pay Plaintiff for the services rendered. Defendant

Sexton engaged in a business transaction for which he knew the assets of Estrategy would not be sufficient to pay Plaintiff. He knew this because he knew that he habitually depleted the Estrategy assets for personal purposes instead of satisfying business commitments. Defendant Sexton has managed the financial operations of Estrategy through a continuing series of fraudulent transfers. A "transfer" is "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." Mo. Rev. Stat. Section 428.009(12). Estrategy's financial activities are closely linked and inextricably intertwined with the assets and affairs of Defendant Sexton, particularly with respect to the repeated bank transfers.

46. Defendant Sexton solely controlled all of the assets of Estrategy. He controlled the Company Accounts, the contracts and all ongoing operations.

47. The transfers from the Company Accounts to the Personal Account and the payment of personal expenses from the Company Accounts by Defendant Sexton were made without any consideration of any kind. Estrategy received nothing in return. For a transaction to be valid there must be a reasonably equivalent benefit given in exchange for the conveyance of the asset. *See Favazza v. Path Media Holdings, LLC*, 2014 U. S. Dist. LEXIS 6340 at *32 (E.D. Mo. 2014).

48. Defendant Sexton has defrauded Plaintiff, a judgment creditor. In such circumstances, Missouri law provides that a creditor may obtain relief against a fraudulent transfer by:

(1) avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;

(2) an attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by applicable laws of this state;

(3) subject to applicable principles of equity and in accordance with applicable rules of civil procedure,

    (a) an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

    (b) appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

    (c) any other relief the circumstances may require.

Mo. Rev. Stat. Section 428.039.1 *See also* "[I]f a creditor has obtained a judgment on a claim against a debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds." Mo. Rev. Stat. Section 428.039.2

49. "Fraudulent intent is rarely proven by direct evidence." *CitiMortgage, Inc. v. Just Mortg., Inc.*, 2013 U.S. DIST. LEXIS 174962 at *11 (E.D. Mo. 2013) quoting *Taylor v. Clark*, 140 S.W. 3rd 242, 251 (Mo. Ct. App. 2004). The totality of the circumstances surrounding the pattern of personal use of Estrategy's assets by Defendants Sexton and Aldasheva while ignoring obligations to Estrategy's creditors is indicative of fraudulent intent.

50. Factors to consider in determining actual intent include:

(1) the transfer was to an insider;
(2) the debtor retained possession or control of the property transferred after the transfer;
(3) the transfer or obligation was disclosed or concealed;
(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
(5) the transfer was of substantially all the debtor's assets;
(6) the debtor absconded;
(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Mo. Rev. Stat. Section 428.024.2.

Defendant Sexton offered no assets to satisfy Plaintiff's judgment, although Defendant was repeatedly transferring cash from the Company Accounts to the Personal Account. "The presence of several indicia of fraud may give rise to a strong inference of fraud." *BancorpSouth Bank v. Hall*, 2001 U.S. Dist. LEXIS 12012 at *14-15 (W.D. Mo. 2011) ("*BancorpSouth*"). Four indicia will suffice. *See BancorpSouth* at *14-15.

51. During the period that started when the original obligation became owed to Plaintiff to the present, Defendant Sexton held the title of either Chief Executive Officer or Chief Operating Officer of Estrategy. The executive position allowed him to exercise complete dominion, management and control over Estrategy. "Insider" includes an officer or director of the debtor and a relative of the debtor. Mo. Rev. Stat. Section 428.009 (7). The Defendants Sexton and Aldasheva are husband and wife. Therefore, under Missouri law, both Defendants Sexton and Aldasheva are liable to Plaintiff for the assets transferred to the Personal Account and assets transferred from the Company Accounts for their personal use. Defendant Sexton has exercised sole control over all of Estrategy's assets, including cash, while he repeatedly transferred Estrategy's cash to himself and his wife.

52. When Estrategy was paid by the Department of Veterans Affairs for the work performed by Plaintiff, Defendant Sexton simply refused to pay Plaintiff. A "debtor" is a person who is liable on a claim and a "creditor" is a person who has a claim. Mo. Rev. Stat. Section 428.009 (6), (4). A "claim" is defined as a "right to payment, whether or not the right is reduced to judgment." Mo. Rev. Stat. Section 428.009(3). At that time, Plaintiff was a creditor protected from fraudulent transfers of Estrategy's assets. *See Curtis v. James*, 459 S. W. 3d 471, 476 (Mo. Ct. App. 2015).

53. But for Defendant Sexton's transferring Estrategy's assets to the Personal Account and paying personal expenses from the Company Accounts and Estrategy's overall assets, Estrategy would have been able to pay its obligation to Plaintiff.

## DECLARATORY RELIEF

54. Plaintiff hereby incorporates by reference paragraphs 1 through 53 as if fully set forth herein.

55. Plaintiff seeks a declaration that:

(1) Brian L. Sexton is the alter ego of Estrategy;

(2) The corporate veil of Estrategy is pierced and its actions and obligations are the actions and obligations of Brian L. Sexton; and

(3) Brian L. Sexton is personally liable for satisfaction of the Judgment obtained by Plaintiff against Estrategy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays the Court:

A. Enter an Order voiding Defendants' transfers from the Company Accounts and any and all other assets of Estrategy to the Personal Account or for payment of Defendants' personal expenses;

B. Enter an Order requiring Defendants to provide documentation of the transfer of Estrategy's cash and other assets to Defendants and the payment of personal expenses from Estrategy's cash or other assets and to cooperate in the collection of all documents, as may be required, from other sources;

C. Enter an Order directing Defendant Brian L. Sexton to provide an accounting of the revenues and expenditures, cash and net income of Estrategy for the years 2014, 2015, 2016, 2017, 2018 and each subsequent year until judgment is entered in this proceeding;

D. Enter an Order freezing Defendants' assets which were directly transferred from Estrategy or can be traced to the fraudulent transfers from Estrategy, during the pendency of this action;

E. Enter an award in favor of Plaintiff that includes compensatory, exemplary or punitive damages, including interest thereon, in an amount to be proven at trial;

F. Enter an award of attorneys' fees and costs;

G. Enter an award of pre-judgment and post-judgment interest;

H. Enter an award for any such further legal and equitable relief as the Court deems necessary and proper under the circumstances;

I. That the Court grant Plaintiff leave to amend or modify the provisions of this Complaint as necessary or appropriate until additional or further discovery is completed in this matter.

DATED: April 12, 2018.

Respectfully submitted,

KREAMER KINCAID TAYLOR LIPSMAN ARNEY WAIT & BOTTARO, L.C.


/s/ Kevin D. Wait
Kevin D. Wait, MO No. 51734
Frank W. Lipsman, MO No. 34255
7450 W. 130th Street, Suite 140
Overland Park, Kansas 66213
913.210.8356 – telephone
913.782-2012 – facsimile
kwait@hrkklaw.com
flipsman@hrkklaw.com
ATTORNEYS FOR PLAINTIFF, NATIONAL GREEN GAS, L.L.C.

# EXHIBITS

**EXHIBIT 1.**    **Abstract of Judgment Against Estrategy**

**EXHIBIT 2.**    **Registration of Judgment in Missouri**